Good morning. May it please the court. My name is Jordan Seibert, and I represent the defendant C. Ray Nagin in this appeal from the Eastern District of Louisiana. We raise four issues in our brief. One is foreclosed, that's the fourth claim regarding an apprendee error, and the government does not oppose relief on the third claim, so I'll focus my First, we contend that the district court erred in instructing the jury to convict Mr. Nagin under the Honest Services Fraud Statute, even if it believed that he would have done or planned to have done the official acts in question without the payments. And secondly, the district court erred in purporting to order Mr. Nagin to, quote, forfeit a personal money judgment, even though the statute only authorizes the forfeiture of, quote, property real or personal. So turning first to the Honest Services issue, I'll spare you a lengthy quotation from the Sun Diamond Growers case cited in the briefs, but if you look at pages 404 to 405 of that opinion from the Supreme Court, there's a detailed exegesis of the important distinction between bribery and gratuity. Bribery is addressed in 18 U.S.C. Section 201B, gratuity in 201C, and the Supreme Court said the distinguishing feature of each crime is its intent element. So with gratuity, the government has to show that the reason for the payment was the official act, but with the bribe, the government must show that something far more sinister occurred, and that is that the reason for the official act or the planned official act is the payment, and that's why bribery under 201B is punishable by up to 15 years of imprisonment, but gratuity is only punishable by two years of imprisonment. And what the district court's jury instruction did in this case was it allowed the jury and in fact instructed the jury to convict Mr. Nagin without that critical showing by the government, that there was an agreement that he was going to take an official act that he wouldn't have taken without the payment. How do you know the difference between a gratuity and a bribe? I mean, a gratuity usually comes after the fact as sort of an award for, oh, you treated me right. Here, I know the payments at issue were made to Nagin after he left office, but isn't there evidence that Fridella and Nagin made that agreement that those payments would be later made while he was still in office? Yes, Your Honor, the testimony was by Frank Fridella that the agreement was made before the mayoral term ended. Mr. Nagin did dispute that in his testimony, but it is important to note, I think, that the Sun Diamond Growers case expressly recognizes that a gratuity can exist in terms of a payment for a future act. The Supreme Court did recognize it's not always an after-the-fact payment. What the difference is, therefore, is not necessarily the timing, but the additional mens rea showing that the government has to make that the purpose of the reason for the official act is the payment. And the district court in this case took that burden away from the government when it told the jury that it had to convict under the Honest Services Fraud Statute, even if it believed that Mr. Nagin would have done the same thing without the payments. Wasn't that consistent with our cases, which interpret the statute a little differently from the way you do? Well, there's the Grace opinion that is sort of a headwind for us in this argument, but there are other cases published from this court, including an en banc decision from 1997 that we cite in the briefs Brumley, which says, quote, the mere violation of a gratuity statute will not suffice. And of course, Skilling reinforced that whole thing. There's nothing in Skilling that waters that down. In fact, it goes further and cuts down the scope of the Honest Services Fraud Statute to its core paradigmatic bribery and kickback schemes. Regarding the Grace opinion, it's unsigned, unpublished, per curiam. There was limited briefing on that issue because it was not the central claim in that case. And the most critical thing to note about the Grace opinion is that it is contrary to the express terms of Skilling. If you read the section of the Grace opinion, and in particular pay attention to footnotes 12 and 13, they're relying on the Valle case, V-A-L-L-E. The government also relies on that case in its brief here, just as it did in its briefs in Grace. The Valle case was a case about play acting, this idea that, okay, maybe the bribe payer doesn't know that the official would do the same thing anyway. But as long as the official understands that he's deceiving the bribe payer in that way, it's still enough to constitute a bribe. Whether that's good or bad exegesis of Section 201B, we know in Skilling the Supreme Court expressly rejected that theory as a basis for honest services fraud. If you look at page 404 of the opinion, it says, we're cutting this statute, this otherwise facially unconstitutional statute, down to its bribery and kickback core in cases in which a payment has been made, and here's the key language, by, quote, a third party who had not been deceived. If you've got a third party who has been deceived, which is the scenario contemplated in Valle, and expressly relied upon in Grace, that's outside the scope of the honest services fraud statute after Skilling. So Grace itself is plainly erroneous. In addition to that, the jury really could have been tripped up here by the erroneous instruction in a way that was even more compelling than the facts presented in Grace. The government's own witness said that Mr. Nagin did work under the consulting contract. Mr. Nagin, that was at page 2354 of the record. Mr. Nagin described the work he did under the consulting contract in his grand jury testimony at pages 42 to 47 of Government Exhibit 286, and also in his trial testimony at page 3367 of the record, lines 6 to 11. So the final thing to note about the Grace opinion, too, is that it didn't acknowledge the critical distinction between subsections B and C of section 201, which the Supreme Court did make at page 412 of its opinion in Skilling. It was decided before Hawkins. The government has language in its brief that makes it sound like Grace deviated from Hawkins sort of knowingly, but it was decided before Hawkins and didn't have the benefit of that published opinion from the government. And it makes no mention of the language in Skilling that excludes situations where a third party has been deceived. But Skilling also says that it doesn't say much about bribery and kickbacks, and it says that's what we're limiting the statute to, that core area. And then I think it has a comment that bribery and kickbacks is already a line that certain courts have drawn, and that's, you know, we're basically following what other courts have done in that area. So given that you have to show any error in the instruction was clear or obvious, I mean, VAE did give the same instruction, didn't it? And how do you get around the clear and obvious error, even if you have the better arguments, if you really parse all these opinions so closely? Well, I think it was clear error because primarily because of Sun Diamond Growers says, look, bribery is different from a gratuity. A bribe, you have to show that the reason for the official act is the payment. And the Supreme Court, when it cites 201B, it does so in the context of saying it's trying to articulate a uniform national standard. So it's true that it may have, you know, constituted arguably a bribe under state law, but that's not enough because it has to satisfy the uniform national standard that the court was articulating and skilling. And the cases that it cites support, you know, our position about this distinction and the importance of the distinction. One of the cases is the Whitfield case. And in that case, there was a judge who was accepting payments and making decisions. And this court in Whitfield said the key thing in that case was that the jury was told it had to conclude that it, the judge made those decisions because of the payments, quote, rather than his honest belief about the facts of the case. And also this court's prior decisions in Brown, United States v. Brown, which is cited in the brief, also showed that just because there's an alignment of the employee's interests and the employer's interests isn't enough to show an honest services fraud violation, which again is consistent with Grumley, where this court said that honest services fraud contemplates that in rendering some particular service or services, the defendant was conscious of the fact that his actions were something less than in the best interest of the employer. Because the government didn't make that showing here, didn't have to make that showing here, given the terms of the instruction, there was plain error that substantially affected Mr. Nagin's rights, and that is reversible. It just seems that the facts here viewed in the light favorable to the government, which we have to take them that way given the jury's verdict, I mean, it seems like clearly a dishonest use of office to be receiving all these payments, these trips to New York, everything else that was in the record, for people you're helping out, I mean, it just seems like classic honest services fraud. Well, I think two points. First, it's important to realize that the Supreme Court, when it was saying that it was narrowing the statute, the honest services fraud statute, it made clear that conflict-free officials, you know, just because there's a conflict doesn't mean there's an honest services fraud violation. But the real problem in Skilling, and Skilling was this type of case, was applying it not in a public corruption context, a private businessman, and that's where those conflict of interest cases really arose. But, well, if we agree with you on the honest services, that those should be vacated, how does that, I know you have this argument that that then taints the bribery convictions, which you don't independently challenge. Can you explain why this instruction would taint the other bribery counts? Well, first, I think it's clear that it would undermine the money laundering conspiracy count because the government didn't identify in the indictment which specific money transfer it would support conviction under that count. Turning to the bribery counts, it would undermine Mr. Nagin's defense as to those counts, which he was trying to explain that a lot of the payments, the people were investors, they were so forth, and to have the jury reject his defense based on an improper instruction as to the honest services count could, you know, carry over and prejudice him in their evaluation of his defense as to the bribery counts. And with the tax counts, again, there could be some spillover, but in particular with the restitution. Restitution cannot be ordered under 3663A and 3663 for Title 26 tax offense, so the rationale behind the restitution in this case was the conspiracy offense in Count 1 and that the tax crimes were somehow in furtherance of that. So the conspiracy count is a Title 18 offense. So if that falls, then the restitution has to fall as well. But I would like to say a few words about the forfeiture. Basically, forfeiture is something that has to do with seizing and stripping away the assets that the defendant has received from criminal conduct at the time of his sentencing. In Book 4 of his commentaries, Blackstone treats forfeiture as synonymous with confiscation. And he says, at common law, a felon forfeited all chattels and goods to the king, and he a man has at the time of conviction shall be forfeited. So here, the government's theory not only reaches backwards, which is statutorily authorized in terms of the substitution of property. You can get a different asset instead of the one that would otherwise be forfeitable if it's no longer available, but it also reaches forward. It transforms forfeiture, which is a remedy about stripping away the property that the defendant may acquire later in life through perfectly good and innocent means, that it can then use to execute, garnish income against future property that the defendant may acquire later in life through perfectly good and innocent means. The government, I mean, I think that is the rationale most courts have used is that it's through this substitute property provision, but that lays out a number of conditions the government has to show, you know, that the asset's no longer there, that it's been transferred somewhere. Was there any evidentiary showing of that by the government? Well, I don't know that there was a dispute in the district court about the fact that Mr. Nagin did not have these assets in his possession anymore. He was financially eligible for court-appointed representation on appeal. By the time of his sentencing, I think there really wasn't anything left to seize. But the Voight case from the Third Circuit points out that the enumeration of those specific ways of substituting assets is to the exclusion of anything else, such as this money judgment thing that we see going on in this case. So unless you have any questions, I'll reserve the rest of my time for rebuttal. Thank you, sir. Thank you very much. Mr. Pickens? Pickens? Pickens? I'm sorry. Yes, sir. Good morning, Your Honor. May it please the Court. My name is Richard Pickens, and I'm appearing on behalf of the United States this morning, along with my co-counsels, Diane Copes and Andre Lagarde. Myself and Mr. Lagarde were trial counsel below, and we'd like to start by addressing the jury instruction issue raised for the first time by Mr. Nagin on appeal, and begin by saying Judge Berrigan got the law right and followed this circuit's precedent to the T. As you well know, the decisive factor in any bribery case is the existence of the quid pro quo, and this was nothing more than a classic honest services bribery case. If the public official agrees to accept something of value in exchange for a future official act, he's violated the law, defrauded the citizens, and committed bribery. When a mayor takes the payoff knowing that the purpose of the payoff is to generate some action on his behalf, he is, in fact, guilty. As this Court stated in Valley, Tomlin, and Grace, this is true regardless of whether or not he completes the act, ever intended to do so, or would have done it anyway. As you pointed out, Judge Costa, the difference between a gratuity is a surprise payment on the back end without the agreement beforehand. There's no need for a quid pro quo in a gratuity case. In a bribery case, you need the quid pro quo, and we have that in this case over and over with a number of co-conspirators presented during the course of the eight-day trial. In fact, this Court looked at the exact same jury instruction, as you know, in Grace, applied skilling in Valley, and concluded there was no error plain or otherwise. Grace said a public official cannot escape liability by simply claiming, after taking payoffs, he would have performed the act anyway, or that he took no action at all. Grace did nothing except confirm this Court's longstanding principle that a bribery offense occurs when the public official agrees to accept something of value for a future official act. Not getting the act completely done or claiming later that you would have performed the same act anyway has never been an excuse in this circuit to the offense of honest services bribery. Judge Berrigan's instruction is not only consistent with skilling, but it's consistent with the body of case law from this circuit, and in fact, Valley made it quite clear at page 346 in its decision that there is no breach of warranty defense or defense of fraud available to the corrupt public official. Valley was pre-skilling, though. What about this Hawkins decision that is post-skilling from the Seventh Circuit that Nagin's relying on? Yes, sir. Hawkins had a situation where they dealt with an entirely different jury instruction. I believe, in fact, the district court judge rejected the government's proposed honest services instruction, which was similar to this, and crafted a hybrid instruction that included the term reward, and the court in Hawkins did not like that term because they concluded that it allowed a gratuity theory to go to the jury on a bribery case, and it's an off-point, out-of-circuit decision. It seems to somewhat stand alone, but to the extent that it says skilling does not allow bribery, does not allow gratuity offenses, that's correct, but Judge Berrigan's instruction did not include the term reward. There was no gratuity theory of conviction allowed. It used the term quid pro quo and made it quite clear, and it followed this circuit's law that you needed an agreement on behalf of the public official to accept a payment in exchange for future official acts. So it's completely separate and apart. It stands alone in decisions that also run contrary to the Hawkins decision itself, and that's Palatee and the jury instructions available for 1346 offenses. On the issue of the money judgment, there's absolutely nothing wrong with a money judgment in a criminal forfeiture proceeding. Mr. Nagin again raises this issue for the first time on appeal after agreeing to not only the amount, but the imposition of a money judgment. We believe he's waived the issue. However, if you find no waiver, we ask the Court to apply the same analysis used in Alguin and Haberman, where the Court looked at the text and the plain meaning of the statute and upheld the imposition of a money judgment. In fact, every circuit to address this issue has resolved it in favor of permitting money judgments. In fact, Alguin noted just that and collected a number of cases in its opinion. The Court relied on Vampire Nation, Day, Padron, which was a case cited in Alguin that actually dealt with a 981 forfeiture issue such as what's before the Court today. You're right. There's all those opinions out there that at least seem to support your position. I'm not sure that when you really look at the text of the statute, I mean, where's the hook you're finding in the statute? Because the substitute property, which is my understanding of the source most courts have found for this, says that if the property's gone, you can't forfeit any other property of the defendant. Well, Megan doesn't have this money now, so it's not currently property of the government. It's basically saying, oh, if he comes in with some money in the future, we can go get it from him. How do you resolve that and find the basis in the text for this? Yes, sir. You have to look at the policy concerns that Congress had when they enacted the statute. As you know, 2461 was enacted in 2000, and it basically took the white-collar criminal offenses under 981 and allowed the criminal forfeiture proceedings in 853 and 32.2, which specifically expressly authorizes the imposition of a money judgment in connection with white-collar criminals that have profited from their crimes. And nothing in the forfeiture statute forbids the use of a money judgment. Nothing in the forfeiture statute says that the defendant must possess assets at the time of sentencing. And, in fact, in Blackman, which is a Fourth Circuit case on a 981 issue such as this, that court adopted Ogwin in support of its decision that money judgments are completely authorized in a 981 forfeiture action made applicable to the criminal forfeiture proceedings through 2461. Ogwin also stated that forfeiture statutes are to be liberally construed to effectuate their remedial purpose, picking up on the statutory language itself to prevent defendants such as Mr. Nagin from profiting from their crimes. To allow anything else would basically create a situation that would be untenable, where the criminal, prior to sentencing, gets rid of his assets and is no longer held liable for his criminal proceeds. The profits of the crime, that's the whole purpose of the statutory structure. Forfeiture sanctions a personal judgment against the offender. It doesn't really attach in rem to the property. It's a sanction against the individual that's committed the offense. That substitute property statute in 853 says you can get substitute property if the property itself that's traceable can't be located, has been transferred, is outside the jurisdiction. Was there any proffer, any other factual showing that that's what had happened, or basically anything that indicates what happened with the funds Nagin actually received that you contend to the bribes? Well, on the money laundering chart in C-10, we did kind of show some of the money flow from the bribes and the downstream money transactions, but basically he spent the money. He was, and that was something that got displayed at trial that every time Mr. Nagin went to a zero balance in his Stone Age bank account, that's when he approached the city contractors for a money payoff, and he used that city contractor money to fill up his bank account at Stone Age. And that happened with both Mr. Williams and with Mr. Fidele. And that money was then depleted, which is why we're here today with a money judgment. Because Congress's congressional purpose of the statute is to impose a sanction or a penalty and not to allow criminals such as Mr. Nagin to escape liability for their profits. And that's why the money judgment concept is there in 32.2, which is authorized under 2461 as a remedy. And he's also failed to show that the money judgment in a forfeiture context constitutes plain error. In fact, it's completely inconsistent with this Court's decisions in Ogwen and Haberman. As to whether or not Mr. Nagin upheld his end of the corrupt bargain with Mr. Fidele, well, first of all, he actually completed an awful lot of official acts. There's no evidence that he was going to do any of this without the payoff. He met with Mr. Fidele's bankers, his financiers, after they sealed their corrupt deal in a meeting in February 2007, after Mr. Fidele threw Mr. Nagin on his private jet to Chicago and Las Vegas and back. This was a classic, honest services fraud, a classic, you scratch my back, I'll scratch your back. There's no evidence that Mr. Nagin was going to meet with the bankers and the financiers. He put Mr. Fidele at the city podium at a press event so Mr. Fidele could tout the wares of his publicly traded company to his investors. He backed Mr. Fidele's Six Flag project. He backed Mr. Fidele's Energy Smokestack project and even flew to Baltimore on Mr. Fidele's behalf to meet with the developers. There's no evidence that he would have done any of this absent that agreement to be paid off on the back end for this. And all of this was done at the same time he had hit up Mr. Fidele for a payoff, a payoff that resulted in a $50,000 check, some free granite, $50,000 check dressed up with fake SEC documents, fake Stone Age ownership documents, which were later withheld by Mr. Nagin when he was under subpoena with the Ethics Board to produce those documents showing ownership interests. So we have a case chock full of bribes, official acts, and concealment. In fact, as to the Smokestack project and the trip to Baltimore, those were events captured on Mr. Nagin's calendar and later concealed from the press during a public records request. So there's no doubt he was scheming to conceal his quid pro quo relationship with Mr. Fidele. This is more of a curiosity than probably anything that affects the outcome of this case. The accounts you charged as honest services fraud that are at issue with this jury instruction, I'm curious why you didn't charge those as bribery like the other accounts. Is it because there were no federal funds involved or just an overall strategic decision? Well, we looked, it was an overall strategic decision and it lined up with the facts in the circuit's case law, especially since the bribe payments were actually wires. So we had nine wires that were transmitted across state lines to go in his pocketbook. So it ended up being a lining up and a strategic call. I'd like to close, unless the Court has any further questions of me, by reemphasizing several points, as we've already emphasized. There's no clear or obvious controlling authority that would toss out Judge Berrigan's jury instruction as being defective or her imposition of a money judgment. This circuit's current case law makes sense and holds public officials accountable for taking bribes. There's no need to cast aside 20 years of good case law with a new definition of bribery. Valley, Tomlin, and Grace make perfect sense. We ask that you affirm the conviction and the imposition of the money judgment. And unless you have any questions, I'll sit down. Thank you, Mr. Bishop. Thank you, Your Honor. Thank you, Your Honor. The government says that the purpose of a bribe is to generate action. But it never had to make that showing to the jury, given the terms of the instruction that Judge Berrigan gave to the jury. The government says that you have to look at the evidence in the light most favorable. But this is not a sufficiency claim. This is a claim of instructional error. And on plain error review, the test is whether there's at least a reasonable probability of a different outcome. And there is one here, given the evidence in the case. The government says there was no gratuity theory of conviction. But that is exactly the theory that the government argued to the jury at page 3490 of the record, when it said, if you're sitting there on the take, making decisions, you're guilty. That's not correct. The showing has to be that the reason for the decisions is the payments. And by giving the instruction that it's enough to convict, even if the jury believes that he would have made the same decisions without the payments, it took that away from the jury. The government also points to a $50,000 check and all these other specific things that happened or transpired, allegedly, between Mr. Nagin and Mr. Fridella. But if you look at pages 39 to 40 of the record, counts 8 to 16 of the indictment, we're talking about nine specific $12,500 payments. Those are the payments that dishonest services fraud counts rest on. And the government never showed and was never required to show that the reason for the official acts that Mr. Nagin took in regard to the green energy management lighting contract, if any, were because of these nine payments. And because of that, this court should set aside the honest services fraud convictions and the conspiracy count. Turning back to the forfeiture issue, not every circuit has approved of this. In Boyd, the Third Circuit disapproved, and although there is a subsequent decision from the Third Circuit, Vampire Nation, that seems to go the other way, that would violate that court's rule of orderliness. One panel can't overrule another in the Third Circuit just as in the Fifth. Also the policy concerns, well, yes, Congress used the term forfeiture, and it's understood when it uses terms like that to be relying on the common law ideas about what forfeiture is. And in fact, in Senate Report Number 91-617 at page 79, the Senate Judiciary Committee said when they put forfeiture into the RICO statute, which was the first reintroduction of forfeiture into American federal law since the founding of this nation, that they were trying to call upon, it was an innovative attempt to call upon the nation's common law heritage to solve an essentially modern problem. But forfeiture is different from a money judgment. Forfeiture means you're confiscating, you're taking away, he's forfeiting the property that's in his hands at the time of his conviction. Now Congress narrowed the scope of what would have otherwise been forfeitable under common law by saying it has to be specific assets tied to the offense, the proceeds. But at the same time, Congress provided that it has to be at the time of sentencing is when forfeiture is imposed. And you see that both in 2461, when it says in imposing a sentence, and at 3554, which is cross-referenced in 2461C, says in imposing a sentence, you have to order the forfeiture. So what the government's trying to do is take that statutory authority and transform it into something else, which is the authority to impose a debt judgment on the defendant that will follow him far beyond the sentencing through the rest of his life. And that is not what Congress had in mind. And we know that as well because Congress provided a specific means of substituting assets. That's different from a personal money judgment.  That's different from a money judgment where it's going to continue to be executed against property he doesn't have at the time of sentencing sometime in the future. So for those reasons, we ask the court to grant the requested relief. Thank you very much. Thank you, sir.